The last case on calendar for argument this morning is Earth Island Institute v. US Forest Service. Good morning. May it please the Court. Drew Beloga for Appellants, Earth Island Institute and Center for Biological Diversity. I'd like to reserve three minutes for rebuttal. All right. Thank you. Your Honors, through the Three Creeks Project, the Forest Service is planning to log large trees across roughly 9,000 acres of the Inyo National Forest. This is planned despite the Forest Service's recognition of the crucial role that these trees play in the forest ecosystem. Namely, they are fire-resistant, meaning they are less likely to burn in wildfires. They are disease-resistant, and they provide important habitat for numerous species. Furthermore, the Forest Service recognizes that the region is in dire need of these trees as a result of its practices in previous decades of conducting fuel reduction logging in accompaniment with fire suppression, which has removed these trees from the landscape and made it more difficult for them to grow back by clogging the understory. Now, the Forest Service is proceeding with this project without having ever considered whether it can achieve the desired conditions for the project area, which are to create a forest dominated by large trees with those characteristics of trees older than 200 years, whether it can achieve those desired conditions without logging. Let me ask you this. In the objections to the 2017 EA, there were some suggested alternatives, prescribed fires, thinning of trees, and I think there was one other or two other alternatives suggested there. So your argument now is that the Service should have considered those alternatives, but those were not raised in the comments to the 2016 draft EA. Why can't we treat those arguments as now waived or unexhausted? As I understand it, the regulations required the objections to be tethered to the comments, and here there's a total disconnect there. Yes, Your Honor. You are correct that those specific alternatives were not raised in appellant's comments. However, regarding this waiver or issue exhaustion analysis here, the Court should look at the administrative process as a whole because here the objection process or pre-decisional administrative review process where appellants submitted those alternatives and their objections is just that. It's pre-decisional. The Forest Service had not made a final decision, and therefore to the extent that— Right. All the objections require, Your Honor, is that—all the regulations require that objections be based on specific written comments. And here in our comments on the 2016 EA, appellants highlighted the ineffectiveness of logging to achieve the project's goals, and then in their objection wrote that the Forest Service justifies that logging based on—I'm omitting some words—flawed policies as described above and in our comments. If you don't make objections, though, how's the Forest Service going to know how to go from there on? Isn't the objection time set up so that they can find out what might be a better procedure? Right? Well, as I understand your question, Your Honor, you're asking whether the Forest Service needs to be alert to these issues and its objections or whether it can only be alert to those issues raised earlier in comments. And here the Forest Service has to also be alert to those issues raised in objections because the action was not final here. The Forest Service made changes between the 2017 environmental assessment on which appellants submitted our objections and the 2018 environmental assessment, and therefore it could have expanded its consideration of alternatives. And furthermore— On its own, without you explaining what the alternatives are? So as I understand it, in the 2016 comments, Earth Island asked for the withdrawal of the EA, and of course there were criticisms laid out, but there was no suggestion as to what the alternatives should be. And that didn't come up until the objections were filed to the 2017 environmental assessment. Is that right? That is correct, Your Honor. However, when appellants made those comments on the 2016 EA, we were not concerned with the specific legal requirement that an agency consider an adequate range of alternatives because it would have been just as protective of these large trees and thus aligned more directly with the project's desired conditions for the Forest Service to have modified its single preferred action alternative. It would have been entirely within the Forest Service's discretion to still consider only one preferred action alternative, but change that single alternative in response to appellants' comments. And it was not until the later objection period, or the 2017 EA, was published that the Forest Service made clear it was not going to change this single preferred alternative, which then appellants acting in accordance with 36 CFR section 218.8 subsection D5, which states that objections are where, and now I quote, the objector believes the environmental analysis or draft decision specifically violates law, regulation, or policy, and end quote, that's where the objector should make those allegations, is in the objection. That language is not found in the comment regulation. Therefore, comments are much broader. And furthermore here, to the extent that the Forest Service quotes cases like public citizen, referring to issues needing to be raised solely in the comment period, that case and the other cases citing it are looking at agencies that have administrative processes that solely consist of a comment period before the final decision has been made. Here the Forest Service has a different structure, a structure required by Congress when it passed the 16 U.S.C. section 6515 that applied this to these projects, requiring that the Forest Service have more of a dialogue with interested members of the public. If you have an objection, don't they have a hearing or something and let the people come in and say why they shouldn't be cutting some of these trees and all that? Is that the way they proceed? No, Your Honor, that is not the structure here. Here it's a less formal administrative review process where the Forest Service sends out its draft decision document, finding of no significant impact, in here the 2017 EA, and then tells those parties which did submit earlier specific written comments and the Forest Service recognizes that Earth Island submitted those specific comments. It tells those parties that then they are free to now submit written objections. What relief are you seeking now? Your Honor, we are seeking that the court find that the Forest Service did not consider a reasonable range of alternatives by not considering whether it could achieve the project's purpose and need without logging large trees and thus remand this back to the agency while vacating the agency's decision notice so that it can conduct this further environmental analysis and thus take the hard look at the project that NEPA requires. And now going back to an underlying part of this discussion, this court's precedent requires that an agency, when presented by members of the public with a viable alternative, requires that the agency examine that alternative. And failure to do so without an adequate explanation means that that environmental assessment is arbitrary and capricious. And here appellant's alternative was viable because it would both meet the project's goals and that also would minimize adverse impacts to the environment. Specifically, appellants suggested using prescribed fire, wildland fire, solely logging trees less than eight inches in diameter, or a combination of those three treatments. And the Forest Service did not give any adequate explanation in its objection response, merely highlighting the issue that we've already addressed, that appellants should have raised this earlier. However, first, as I've noted, this argument fails because this viable alternative was offered pre-decisionally. The Forest Service had not made a final decision. And furthermore, to the extent that the Forest Service tries to argue that this alternative did not meet the project's purpose and need or was not significantly distinguishable, these arguments are irrelevant when offered by appellate counsel, as this court has held in 2022 in Environmental Defense Center v. Bureau of Ocean Energy Management. Council, can I ask a question? I think this is your second argument. You seem to be arguing that one of the other deficiencies here is that they did not take public comment for the EA that was issued in 2018. Is that correct? Yes, Your Honor. What is the basis for that argument? You agree that they took public comment in 2017. They responded to your comments. You think that they needed to do it again before they issued the final revised EA in 2018? Or are you saying it was after the final revised EA and before the 2020 action? Well, Your Honor, I'll start by briefly summarizing the timeline here. The Forest Service's first draft environmental assessment was published in 2016. It solicited comments during its standard notice and comment procedure. Then it published a revised environmental assessment in 2017, which was accompanied by the draft decision notice, and thus was the basis for the objection period. And it was through their objections that we then submitted our viable alternative. And in response to our objections, the Forest Service then published another revised 2018 EA, which became the final EA. And this document contained changes from the earlier two environmental assessments, thus indicating not only that the Forest Service could have incorporated a different alternative or changed its single preferred action alternative, but also that by making these changes it was required to offer another opportunity for public comment by its regulation at 36 CFR section 218.22d that requires a supplemental revised. I wanted to look at that language because the language of that regulation, and I think this is what you're relying on, is that the Forest Service has to take public comment every time a proposed project or activity, which this is all one proposed project or activity, right? Would you agree with that? Yes, Your Honor. For which a supplemental or revised EA or EIS is prepared based on the consideration of new information or changed circumstances. So your argument is that under the regulation this was a revised EA. Yes. And that it was based on new information. Was it based on new information? Well, I would argue it falls more clearly under the changed circumstances. I see. Because the Forest Service had changed the circumstances of the project by changing both the desired conditions, by reducing the number of large trees desired in the project area from 22 per acre in the 16 and 17 EAs to 14 per acre in the 18 EA, thus indicating that it sought to foster the growth of roughly 72,000 fewer large trees if you extrapolate that reduction of 8 across the roughly 9,000 acre project area. And then a second important change here was that the Forest Service in the earlier environmental assessments had stated that in its preferred action alternative the majority of trees being logged would be between 10 and 20 inches in diameter and then it reduced that number to be the majority of the trees being logged but not all would be less than 10 inches in diameter. And this change is the most relevant to public comment because it suddenly made it even more clear to the public that the Forest Service could achieve the project area's desired conditions by logging a majority of what would generally be considered small trees and yet was not considering whether it could avoid logging large trees altogether. And it's this idea of changes in environmental assessments affecting how the public can weigh in that this court has looked at in the past when considering, albeit under different regulations. Well, that was one of the questions I had. Are there any cases interpreting this particular regulation? No, Your Honor. And so do you view there as being like a de minimis exception to the changed circumstances? Because I think the Forest Service is arguing, well, these circumstances didn't have any significant effect on the environment. Why isn't that adequate under the regulation? Well, Your Honor, as you noted, there are no cases interpreting this. So for a specific exception under this regulation, it's hard to find that. But in general, regarding this idea of when an agency is required to offer additional public comment on a revised environmental assessment, whether that will lead to a never-ending cycle, this court addressed that in California v. Block, as I mentioned, under different regulations, but stated that more or less the limiting principle is that an agency can modify an earlier document up to the point that it does not dilute the relevance of the public's earlier comments. What year was that decision in Block? One moment, Your Honor. It was 1982. So it was under the CEQ's NEPA regulations from the 1970s. I know you wanted to save a little bit of time, but let me ask you on the Indian Craters Project. I have a hard time seeing why that isn't out. What's your best response to that? It wasn't in the complaint. Oh, of course, Your Honor. This court has already addressed this issue in Friends of the Clear Water v. Dombak. It's rather straightforward, as the court explained there. When under a complaint alleging the Forest Service's failure to supplement its NEPA analysis, which is a continuing duty, later, after the complaint has been filed, environmental plaintiffs include in their arguments regarding that complaint information that has arisen after the complaint was filed. If that information was generated by the agency itself, which here, the Inyo Craters, was announced by the Forest Service, if that information was generated by the agency itself, then the timing is immaterial, because the agency has the duty to consider it and conduct supplemental NEPA analysis, and the fulfillment of that duty should not depend on the limited resources of environmental plaintiffs. But what if the Forest Service is putting into action the things that were noticed about, can they object then or file something to object to the cutting of a certain size trees or trees at all or anything else that they said? Or has time run out? Are you asking, Your Honor, regarding the earlier, whether we could have filed comments on the Inyo Craters project or the Three Creeks project as changed by the Inyo Craters project? Either one, whatever. Well, no, Your Honor, we could not have filed comments on the Three Creeks project as changed. That would relate back to our second issue on appeal here. And regarding the Inyo Craters project, the effects of that project are most relevant to the Three Creeks project, because the Inyo Craters project— that's a really basic notice issue. Well, Your Honor, I'm going to answer this question briefly and then try and reserve the rest of my time if you have any further questions. Regarding notice pleading here, the service has pointed to no reason why it was not on notice or was not able to effectively defend itself against this claim, which this court in Star v. Baca has noted as the underlying principle of Rule 8 of the Federal Rules of Civil Procedure. And that is because this issue is based on the administrative record, and appellants moved to complete the record. And thus, this Inyo Craters project is in the excerpt of record. It was before the district court, and the Forest Service can point to no reason that it was unable to have notice of this or defend itself effectively. And with that, I would like to reserve the rest of my time for rebuttal. Thank you. May it please the court. My name is Ezekiel Peterson here on behalf of the United States Forest Service. The Forest Service complied with NEPA when it approved the Three Cricks Forest Health and Restoration Project on Inyo National Forest. The Three Cricks project would almost immediately improve the health of the forest and would strengthen the forest's resilience to forest fires, bark beetle outbreaks, and disease. The Forest Service, at every step of the way, took a hard look at the environmental consequences of the Three Cricks project and involved the public in its decision-making. Plaintiff's claims to the contrary are both procedurally barred and wrong on the merits. This court should affirm. I'll plan to start by getting into the alternatives issue and the issue of administrative waiver in this case. Actually, counsel, before I forget, can you start with the 2018 EA and why no additional comment period was necessary? I just don't have the expertise, and Mr. Belogo did point out the differences between the 2017 and 2018. Help me understand why those are minor and not material changes that would require a new comment period. Of course, Your Honor. I think the heart of the public comment issue here about why no public comment was required between the 2017 and the 2018 EA is that the project treatments themselves, all of the alternatives, everything in the meat of the project, the treatments of the units, didn't change at all between the 2017 EA and the 2018 EA. They were completely identical. So the minor changes that did get made were clarifications about the hypothetical desired conditions for the purpose and need of the project in that purpose and need section of the EA. But were there substantive changes to the size of the trees that were to be logged? No, there were no substantive changes to the size of the trees to be logged. There were no substantive changes to the treatments. What about the number of large trees to be logged? No, there was no substantive changes to that either. The project treatments were the same. So they changed kind of the desired forest conditions, but they didn't actually change the way that the project would be carried out. When did that change the different kind of trees to be removed and all? That never changed, Your Honor. But the changes that the plaintiffs are pointing to are changes that the Forest Service made in response to plaintiffs' own objections requesting clarifications about the forest health metrics that the Forest Service was using. So, for instance, the plaintiffs pointed out that the 2017 EA said that most of the trees to be harvested were trees between 10 and 20 inches diameter at base height and pointed out that there was an inconsistency because the way that this project works is that the very smallest trees are harvested first, only up to larger trees as absolutely necessary to meet density goals. And the Forest Service looked at plaintiffs' objection, recognized that plaintiffs had made an objection and that was confusing, and realized that they had made a clerical error in writing out the description of the EA. It was then clarified that most of the trees to be harvested would be less than 10 inches at base height and most of the merchantable trees to be harvested or the trees that could be sold were between 10 and 20 inches diameter at base height. But your argument is that wasn't a change, that was a clarification. Exactly, Your Honor, because under California, the block, which doesn't interpret... I wanted to ask, does block control here? I mean, one of the, not concerns, but questions I had about the government's argument is it relies on a bunch of these cases, and block is one of them, that predate the regulation. Wasn't the regulation adopted in 2013? Yes, it was, Your Honor. So how can we rely on pre-2013 case law? I mean, is that incorporated into the regulation? How do we rely on that? No, I don't think so, Your Honor, but I think the court in interpreting when the Forest Service needs to offer an additional round of public comment in interpreting this language of changed circumstances or new information, it's helpful to look at some of this case law to see how that has been interpreted and to see that block rejected a standard that would require an entirely new round of public comment every time there was some minor change to an environmental assessment. Well, but I guess the problem is the Forest Service then adopts a regulation in 2013, and it's decided for whatever reason to bind itself to that regulation. And so to the extent that the regulation language is different, it could impose different duties. And so aren't we stuck looking at whether this is basically changed circumstances? I mean, you would agree that if this is changed circumstances under the regulation, you would have had to put it out for notice and comment, or, yeah, new comment. Yes, Your Honor, but here there were no changed circumstances because the only changes were these minor clarifications made to plaintiff. But that's how we decide this. It's not that the changes were minor, it's that they weren't changes, they were clarifications. Yes, Your Honor. They were not, the changes were not made in response to any new information or changed circumstances. And to the extent that plaintiffs are concerned about not getting to weigh in on these clarifications, I think that's largely alleviated by the fact that these changes were made in response to plaintiffs' own objections. So it's not like the Forest Service sua sponte made these changes and slid out the final EIA without letting plaintiffs talk about it. Plaintiffs had the chance to discuss these issues, and that's why the Forest Service made the changes. Weren't there changes, though, to the number of large trees per acre? Or, again, you're saying that was a clarification as well. That was a clarification because it's in the discussion of the hypothetical desired pre-European settlement conditions on the National Forest and not the actual project treatments that are taking place. So for the project treatments that are taking place, which is in the proposed action alternative section of the EA, that remains consistent between the two EAs, that the Forest Service is treating to certain density metrics in each unit. And each unit has different treatments that are taking place on those units to protect different botanical or wildlife resources on those units. And the Forest Service is always starting with the very smallest trees and thinning only up to the largest trees performing prescribed burns, only up to the largest trees necessary to meet those density goals for the given unit. But you're saying that that fits in the size of the trees cut and the number of large trees per acre. Those fall within the same issue, in your opinion. I viewed them as two different issues. I'm sorry, Your Honor, can you repeat the question? Well, there were two. As I understood it, there were three changes or at least three changes in the final EA. They clarified the size of the trees to be cut and then the number of large trees per acre that would be cut. But do you view those as the same issue or do you view those as different issues? They weren't clarifying the number of large trees per acre to be cut. I believe they were clarifying the desired number of large trees per acre that would remain in the desired pre-European settlement condition. Oh, yeah, yeah, yeah. I see. Okay. So, yeah, I think these… But either way, do those collapse into the same issue, basically? Yeah, I think so, Your Honor, because they're both in that section describing the desired pre-European settlement condition. The third change was you adjusted the mean basal area. I'm not entirely sure I understand exactly what that means. So the basal area is a measurement of the, essentially, area of all the logs over a given acre of forest. If you took a cross-section of every log, I guess I should say living tree over the… So smaller trees have a smaller basal area, larger trees have a larger one, and you add them all up? Yes, yes. But the distinction here is that if you have a lot of smaller trees, that can be the exact same basal area as one large tree. So it doesn't tell you everything you need to know about the forest health. Is it true that you adjusted the mean basal area? In the desired hypothetical conditions section, we did. But the 2017 and the 2018 EA explain that the treatments would thin project units to an average basal area of 70 to 140 square feet per acre. And that's identical in both of the EAs. That's at 2ER-202 and 3ER-322. Well, again, you would say that's not a changed circumstance. Exactly, because the treatments didn't change. And you would agree that if you did change those and you said 50, the basal area is now 50, I don't know what that hypothetical would look like. But then you would agree that you would have to put out for new comment? I think it's possible that if the Forest Service changed an alternative in response to new circumstances, they changed the actual treatments that were occurring, then perhaps new comment would be appropriate under the Forest Service regulation. Yes. We took your arguments out of order. I did. You wanted to talk about exhaustion and whether the regulations apply in this case? Yeah, no problem, Your Honor. Yeah, just as an initial matter, the plaintiffs have forfeited their argument as to the alternatives issue because they didn't structure their participation in a way that meaningfully allowed the agency to respond. And just to kind of outline the Forest Service's public participation process for a case like this, it all starts with scoping comments. So the Forest Service puts out a scoping document, a scoping notice, and requests feedback on kind of very broad strokes of the project. Here's what we're thinking about doing. What are different ways we can accomplish this? So that's opportunity number one for plaintiffs to weigh in. Then the Forest Service prepares a draft environmental assessment, or EA, and the plaintiffs have a second opportunity to talk about the alternatives in that document, talk about why they may or may not be acceptable, and propose any new specific preferred alternatives. After that, we go to the objections process. And the objections process, by statute, 16 U.S.C., 1615, only happens after the Forest Service has prepared and has finalized their EA. And so this is really what it is. It's the Forest Service's administrative appeal process. It's not an opportunity for alternatives to be raised. It's not where the Forest Service considers different alternatives. It's the administrative appeals process that happens pre-decisionally after the Forest Service has prepared an EA. So to raise alternatives for the first time in an objection is essentially akin to a litigant raising an issue for the first time on appeal before raising it in the district court. It deprives the agency of the opportunity to meaningfully consider the issue. But what about, and I hope I'm not butchering the name too much, our case of Ilio-Ula-Kalani Coalition? You're talking about thinning of trees, and so why should we apply the regulation in this context? Wouldn't the agency know that those are alternatives and then discuss why prescribed fires or pre-commercial thinning of trees are not viable under these circumstances? Well, I think part of the issue here is that the alternative that the agency considers uses these treatments. So it uses prescribed fire. It uses thinning of trees, starting with only the very smallest and getting to the largest only as necessary to accomplish the density goals. So the agency has already considered an alternative that is very similar to what plaintiffs proposed in their objection. And it's not entirely clear what plaintiffs are proposing in their objection. They say the alternatives would use prescribed fire, wildland fire use, and or pre-commercial thinning of trees under 8 inches of diameter. Well, the alternative that the Forest Service considered already uses prescribed fire and pre-commercial thinning of trees under 8 inches in diameter. But with respect to the, is it the Ileolo Kalani case? There, I think the facts were different in that there was ample record evidence that there was a specific project alternative that the agency knew they could have considered or should have considered. And the court said under a situation like that, the plaintiffs weren't required to raise that in administrative proceedings. Here, you're saying the same thing. You're saying that the service knew about the alternatives of prescribed fires, et cetera, and adequately accounted for that. So should we get past the unexhaustion argument and then get to the merits of whether the service adequately explained why the alternatives wouldn't work? I don't think that's necessary, Your Honor, because I think in order for the plaintiffs to have some sort of claim that's worth considering on the merits, they have to have raised a specific project alternative that the Forest Service hadn't considered in some way already in the public comments or in the scoping comments, or at least at some point when the agency was considering alternatives and in a way that would give the agency time to meaningfully consider the alternative. So the crux of the question here is not whether the plaintiffs have raised this issue at some point, no matter how amorphously before the agency. The crux of the matter is whether they've structured their participation in a way that allowed the agency to give the issue meaningful consideration, and they have not. I'll just briefly talk about supplementation. A supplemental NEPA document is only required if new information arises sufficient to show that the remaining action will affect the quality of the environment in a significant manner or to a significant extent not already considered. And here the Forest Service reasonably declined to prepare a supplemental EA in response to either the 2020 bark beetle outbreak or the Inyo Craters Hazard Tree Abatement Project. The bark beetle outbreak is exactly the kind of blight on this forest that this project is meant to prevent and I think underscores the importance of moving forward with this project. And the Forest Service rationally explained that removing two units from the project footprint would not have any sort of previously unconsidered significant effects on the environment. With respect to the Inyo Craters project, plaintiffs have not pled any factual allegations about this project in their complaint, which under the fundamental factual pleading standards is inappropriate to prevail on this claim. But even so, the Forest Service is not required to go back and supplement previous projects in the same area every time they propose a new project in the same area. Instead, that analysis is done carrying forward in future projects. You're not relying on Friends of the Clearwater and saying, well, it's part of the record. You knew that that was going to be part of this case. I think Friends of the Clearwater is distinguishable here because it doesn't address pleading standards. I think it's unclear in Friends of the Clearwater whether or not the complaint actually had factual allegations, but I think that's a separate issue and the fact that the complaint here doesn't have any factual allegations or mention this project at all precludes them from prevailing on that. And I think that's clearly from the Navajo Nation case. No notice is what you're saying? Yes. Unless the court has any further questions? Thank you. Thank you very much. May it please the court? I would like to make two points, both with regard to the public comment issue and then returning to the alternatives issue. With regard to the Forest Service's failure to offer an opportunity for public comment, these changes are important not because of how they relate to the Forest Service's technical understanding or implementation of the project, but how they affect how the public could weigh in. The Forest Service argues that the changes to the desired conditions were merely hypothetical and did not thus affect how the public could weigh in. The desired conditions are what drives the Forest Service's consideration of alternatives. Therefore, the desired conditions limit or expand how the public can suggest alternatives to the Forest Service. Therefore, the reduction of 22 large trees per acre to 14 large trees per acre was not merely a clarification. It highlighted to the public that suddenly an alternative protecting some of these few remaining large trees is that much more important. And now moving back to the—oh, sorry, one final point, actually, on the public comment issue. Judge Nelson, I noted that you wanted more guidance in interpreting this regulation. Promulgating the regulation in 2013, the Forest Service and the Federal Register noted that major changes should generally not be made to draft decision documents without good cause or without an opportunity for additional public involvement. That seems to hurt your argument because it says major changes shouldn't be made. Well, I think these major changes to the desired— You think these are still made. I would have relied more on the—well, go ahead. Keep going. And now regarding the alternatives, to the extent that the Forest Service argues that our alternatives are not significantly distinguishable, that is the type of post hoc rationalization that this court has held irrelevant in the Environmental Defense Center. With that, I would like to conclude by saying that the Forest Service has not explained the fundamental disconnect between the desired conditions and its decision to walk some of these few remaining large trees. Thank you, Your Honors. All right. Thank you very much to both sides for your argument this morning. The matter is submitted. And good luck to you, Mr. Belogo, with the rest of your law school graduating next year or this year. Thank you, Your Honors. Congratulations, and thank you for supervising in this case. That concludes our argument calendar today, so the court is adjourned until tomorrow morning. All rise.
judges: Siler, NGUYEN, NELSON